UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FRANK PHILLIP O'DELL,

                         Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                              14-CV-592S
CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

        1.      Plaintiff Frank Phillip O'Dell challenges an Administrative Law Judge's ("ALJ")

decision dated March 6, 2013, wherein the ALJ determined that Plaintiff was not disabled

under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act.  He now

contends that this determination is not based upon substantial evidence, and reversal is

warranted.

        2.      Plaintiff  filed applications for disability insurance benefits and supplemental

security income on April 27, 2011, alleging a disability beginning on March 31, 2006.  Both

claims were denied initially on July 18, 2011. Plaintiff was granted a hearing on those

denials on February 27, 2013, at which Plaintiff testified.  The ALJ subsequently found that

Plaintiff was not disabled within the meaning of the Social Security Act, and the Appeals

Council denied Plaintiff's request for review on May 27, 2014, rendering the ALJ's

determination the final decision of the Commissioner. Plaintiff filed the instant action on

July 22, 2014.

        3.      Plaintiff and the Commissioner each filed a Motion for Judgment on the

Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Judgment on

the pleadings is appropriate where material facts are undisputed and where a judgment

on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert denied*, 459 U.S. 1212 (1983).

5. To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might

justifiably have reached a different result upon a *de novo* review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

6.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. <u>See</u> 20 C.F.R. § § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.    This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); <u>see also</u> <u>Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.    While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. <u>See</u> <u>Bowen</u>, 482 U.S. at 146 n.5; <u>Ferraris v. Heckler</u>, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work

experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since March 31, 2006, his alleged onset date (R. 24);[1] (2)  Plaintiff had the following severe impairments:  bipolar disorder, post-traumatic stress disorder, depressive disorder, borderline intellectual functioning, and polysubstance dependence in remission (R. 24); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (R. 25-26); (4) Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels with certain nonexertional limitations, including performing only simple, repetitive and routine tasks with no more than occasional contact with others (R. 26-30); and (5) Plaintiff had no past relevant work, but three were nonetheless jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (R. 30-31.)

10.      Plaintiff first contends that the ALJ erred by failing to appropriately address whether Plaintiff met the criteria for a *per se* intellectual disability under Listing 12.05C. (Pl's Mem of Law at 19-21); see 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. Specifically, Plaintiff argues that the ALJ improperly rejected a lower IQ assessment that met the level of severity to qualify as disabled. (Pl's Mem of Law at 15-19.)

Listing 12.05 lists the criteria for determining whether a claimant is *per se* disabled

---

[1] Citations to the underlying administrative record are designated as "R."

due to an intellectual disability.[2] "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Subsection 12.05C provides that a claimant is disabled where he or she has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

The record in the instant case contains two sets of IQ scores for Plaintiff: a July 2011 finding that Plaintiff had a full scale IQ of 80 and a January 2012 finding that he had a full scale IQ score of 65 (R. 287, 317.) Generally, "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D(6)(c).  However, because section 12.05 refers to a "valid" IQ score, an ALJ may reject an IQ score as invalid where it is inconsistent with the record. Baszto v. Astrue, 700 F. Supp. 2d 242, 248-49 (N.D.N.Y. 2010) (collecting cases); see generally Burnette v. Colvin, 564 Fed. App'x 605, 608 (2d Cir. 2014) (ALJ's rejection of IQ assessment as inconsistent with the record supported by substantial evidence where objective medical findings were relatively benign).

Here, contrary to Plaintiff's argument, the ALJ sufficiently explained his reasons for not crediting the lower IQ test results. In discussing whether Plaintiff met any Listing, the ALJ stated that:

---

[2]At the time the ALJ's decision was released, this impairment was referred to as mental retardation.  Although this terminology has changed, the relevant criteria has not.

> The claimant's borderline intellectual functioning does not meet the criteria of Listing 12.05. <u>As discussed below</u> [in connection with the RFC determination], I do not find the Claimant's January 2012 WAIS-III scores, which were in the [intellectually disabled] range, to be a valid indicator of his intellectual functioning, given his obviously higher adaptive functioning and, particularly in light of his scores on an earlier WAIS-IV administered in July 2011, on which he performed in the low average range.

(R. 26 (emphasis added).) The ALJ further addressed this issue in resolving Plaintiff's RFC, where he concluded that Dr. Maiden's January 2012 assessment warranted little weight because it was "unsupported and contradicted by the remainder of the evidence." (R. 30.) In support of this conclusion, the ALJ noted that the claimed intensity, persistence and limiting effects of Plaintiff's alleged mental limitations were "based largely on his reported history and subjective statements." (R. 28.)

> [T]here is little in the way of objective medical evidence to support [Plaintiff's] testimony that he is so functionally limited that he is unable to perform work on a sustained basis – and no evidence of any mental limitations prior to April 2011. Despite numerous symptom complaints, the claimant routinely has essentially normal mental status examination findings, including normal memory, attention, and simple calculations. There is no objective evidence of vegetative signs of depression, significant or frequent anxiety or panic attacks, uncontrolled or uncontrollable mood swings, or psychosis.

(R. 28-29.) With respect to objective medical findings, the ALJ noted that "not one of the progress notes, reports or letters in the record indicates significant objective findings, except for the January 2012 IQ test, which is contradicted by the earlier 2011 IQ test. [Plaintiff] does not allege and there is no evidence of an injury that would account for this decline in intellectual functioning." (R. 29.) Instead, examination findings revealed normal attention, concentration, and memory, as well as conservative treatment. (R. 26-30; <u>see</u> 300, 323, 325, 335-36, 338.)

The ALJ did not err in highlighting the lack of objective medical findings when concluding that Plaintiff's mental impairment was not as severe as alleged or in rejecting certain medical opinions as conclusory. (Pl's Mem of Law at 25-27.) In his decision, the

ALJ acknowledged that a claimant's symptoms may suggest a greater severity of impairment than could be shown by objective medical evidence. (R. 29.) However, the ALJ found that the credibility of Plaintiff's more recently reported severe symptoms was also undermined by Plaintiff's conservative treatment and his self-described activities. (R. 29.) Accordingly, this Court finds no error in the ALJ's decision to reject as inconsistent with the evidence in the record the conclusory assertions that Plaintiff could not work. (See e.g. R. 290-91 (Plaintiff was "fearful" about obtaining employment and "does not believe that he is capable"), 356 (conclusory statement that "the clinic doctor" determined Plaintiff was ineligible for work for "90 days").)

These same activities were also relied on by the ALJ in his conclusion that Plaintiff had a higher adaptive functioning than would be expected from someone intellectually disabled within the meaning of the Listings. "A person suffers from a deficit in adaptive functioning if []he is unable to satisfactorily cope with the challenges of ordinary everyday life, including living on one's own, taking care of children without help sufficiently well that they have not been adjudged neglected, paying bills, and avoiding eviction." Burnette, 564 Fed. App'x at 607 (internal quotation marks removed) (quoting Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012)). Here, the ALJ noted Plaintiff's ability to live alone and perform the activities of daily living, including cleaning, preparing simple meals, shopping, using public transportation, and handling his own finances. (R. 29.) Further highlighted was Plaintiff's ability to maintain a social circle, although small, as well as his ability to draw, read poetry, and write. (R. 29.) The ALJ particularly noted that the "clarity and expressiveness" of Plaintiff's writing was inconsistent with the lower IQ score. (R. 29, 327-32.) The determination that Plaintiff did not meet the criteria for a per se finding of disabled pursuant to section 12.05 is therefore sufficiently explained in the decision and supported

by substantial evidence.

11.    Contrary to Plaintiff's next contention, the ALJ's RFC finding is consistent with the opinion of Dr. Zuckerman. (Pl's Mem of Law at 21-24.)  The ALJ determined that Plaintiff could perform a full range of work at all exertional levels, but was limited to simple, repetitve, and routine tasks which did not involve more than occasional contact with others. (R. 26.)  In June 2011, Dr. Zuckerman opined that Plaintiff "likely would be not impaired as far [as] being able to recall simple work related instructions, but mild to moderately impaired in attempting to follow more complex instructions and/or work directions." (R. 239.) Plaintiff would also be moderately impaired with respect to stress management and working cooperatively with others. (R. 239.)   Plaintiff highlights Dr. Zuckerman's subsequent statement in July 2011 that the evaluation would "certainly confirm that this individual would exhibit moderate impairment mastering both simple and complex tasks; specifically those that would require sustained effort and any numerical operations." (R. 288.) However, by limiting Plaintiff to "simple, *repetitive* tasks" with only occasional contact with others, the RFC determination is not inconsistent with Dr. Zuckerman's findings such that it can be concluded that the ALJ's determination is not supported by substantial evidence.

Further, the ALJ expressly considered whether use of the Medical-Vocational Guidelines to determine Plaintiff's disability status was appropriate in light of Plaintiff's non-exertional limitations.  (R. 31); see Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (use of guidelines appropriate, but not controlling, where a claimant's work capacity is not "significantly diminished" by non-exertional limitations).  Specifically, the ALJ found that Plaintiff's mental limitations would have little to no effect on Plaintiff's ability to perform unskilled work, which "ordinarily involve[s] dealing primarily with objects, rather than with

data or people," a description of work consistent with the ALJ's RFC determination as well as Dr. Zuckerman's assessment of Plaintiff's abilities. (R. 31 (citing SSR 85-15, 1983-1991 Soc. Sec. Rep. Serv. 343, 1985 WL 56857, *4 (S.S.A. 1985)).

12.    Finally, Plaintiff contends that the ALJ failed to sufficiently develop the record by eliciting information from Plaintiff during the hearing that would inform a decision on Plaintiff's adaptive functioning. However, there is no indication that there was any gap in the record on this issue, inasmuch as the record contains, and the ALJ discussed, Plaintiff's own reports regarding his abilities in addition to the medical evaluations. (R. 29, 139-43, 145-48, 236-38, 300, 335, 338); Amrock v. Colvin, No. 3:12-cv-55 (FJS), 2014 WL 1293452, *4 (N.D.N.Y. Mar. 31, 2014) (no error in developing the record despite alleged failure to elicit daily activity testimony where the record otherwise contained this information, including reports from the claimant himself).

13.    Having considered Plaintiff's challenges, this Court is satisfied that the ALJ committed no reversible error, and that his decision is based on substantial evidence. Defendant's Motion for Judgment on the Pleadings is therefore granted and Plaintiff's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.


      SO ORDERED.

Dated:  September <u>19</u>, 2015
       Buffalo, New York


                                        <u>/s/William M. Skretny</u>
                                        WILLIAM M. SKRETNY
                                        United States District Judge